Next case is Rattler Tools v. Bilco Tools Good morning, Your Honor. We are before your court this morning on two major areas of error made by the district court, the first of which is claim construction, the second of which is addressing the state law claims. Let me briefly basically address the state law claim issue. The lower court basically ignored the history of the dealing between Bilco and Rattler, which was a long-standing relationship whereby Bilco was the middleman providing this tool to the oil field. The tool was in their shop. The tool was assembled. There's evidence that the tool was handled by them. It was disassembled by them. And nothing prevents that. If they obtained it in an appropriate manner, they can disassemble and do whatever they want with something that they may have obtained in an appropriate manner, right? Well, Your Honor, they were the middleman. They were the distributor. They were the go-between. There was a confidentiality agreement between... I understand that, but they may have gone out and bought one of these and said, let's look at what we're the middleman for, and there'd be nothing wrong with that, right? Well, Your Honor, they weren't for sale. They were manufactured and sold, which gutted the business of Rattler. They were sold when Rattler's business was only a rental business. This was a situation where they were undersold, where the whole research and the whole testing, getting a tool... There isn't even any evidence that Bilko did the disassembling, is there? Yes, there is, Your Honor. There is significant evidence by the pickup fellow from Rattler. He sees it sitting on a table disassembled. How does he know how it got there? Who did it? This is a rental tool. It was delivered there by Rattler. It went out to Shell. It came back from Shell. When they came to pick it up to redress the tool, it was disassembled. Two magnets were out of the device. Well, Your Honor, it's arguable. Let me move, if I may. Can I ask on this issue, is your complaint that the judge misapplied the law, or are you complaining that there was insufficient evidence? What exactly is your complaint with respect to the state law claims? In the state law claims, I don't think they were addressed, Your Honor. Well, she does address them. She fines against your client because the burden of proof wasn't met. Well, Your Honor, I suggest... I mean, that's what she says on page 50 of the opinion, of her opinion. I suggest to you that they were not fully investigated. There were three different people claiming to be the inventor of this tool. And if I may, Your Honor, I'd like to move to the era of the claim construction. OK. This Court has repeatedly stated that the limitations of the specification are not to be read into the claims, that the specifications are to be used to ascertain the adventure, and not the scope of the claims. This Court has held that the specifications can supply the understanding of the clear terms, but should never trump the clear meaning of the claim terms. This is the Commonwealth case. In this particular case, this Court... Well, if you have magnetist assemblies that are covering a majority of the surface area, where's the error that the district court made? Those assemblies have to cover the surface area. They don't. Your Honor, if you're going to speak in terms of a magnet not having any of the properties of a magnet, as you speak into this microphone, as we have a compass in this room, there's magnetism in this room. There's magnetism on this planet. There's a polar situation. The magnet cannot be denied. To speak in terms of a magnet being a cotton ball that's sitting there... But we don't say the North Pole covers a majority of the surface of the world because its polarity has some effect on the magnetic current throughout the surface of the world. Your Honor, if we had a compass in this room, that magnet field of the earth would affect us here in this room. Understood, but the point is we don't say that the North Pole covers the entire world just because the magnetism extends infinitely into space. But it does. It does, Your Honor, and I think the distinction... Wouldn't there be no point in saying the magnetism covers a majority of the surface? Of course it does. By scientific fact, it extends infinitely into space and covers an infinite amount of surface area. You can only be talking about the magnet assembly, the physical magnet itself, right? Hence, Your Honor, the difference between occupying and covering. In column 3 of the 787 pattern, lines 5 through 7 speaks very precisely with regard to occupying or the footprint, if you will, Your Honor. Whereas if you turn to the covering verbiage in column 3, lines 66 through 67, or column 4 at lines 1 through 4, we're speaking of the coverage, of the magnetic coverage. There's a clear distinction between occupy and covering that's made into the claim. And if we look to Chisholm, who basically says that the line between interpreting claim language in light of the specification and reading a limitation from the specification is a distinction that this Court historically has looked to in the Carmar case and the DuPont case, historically basically said, look, you can look to the limitations for interpretation of the claim language, but you can't look to the limitations for limiting that language. And when we look to protecting what this Court's philosophy has always been, protecting inventorship, and if I might just stray for just a second, in the courtroom today is an inventor. Fifteen patterns, ten issues. His daughter is an inventor. She's just been chosen to go to the moon. Very few people have that opportunity. Why? Because she has invented a weightlifting machine to be used in outer space. But that's not the issue of the Court here today. You have, and correct me if I'm wrong, pages 9 through 17 of your brief, I think you state, recite, 12 claim limitations? Yes, Your Honor. And am I correct in understanding that you're saying that the district court construed each of those limitations incorrectly? I will, Your Honor, and I'll give you an example. No, no, I understand, but one difficulty I have is that, for example, if you go to page 11, we're talking about the detachably non-rotatable securing each of said magnet members, and you know how the district court construed the term, okay? Yes. And then you talk about Mr. Rutley explaining that non-rotatable secured means that the magnets do not rotate, and then there's some discussion about how supposedly the Bilco product infringes, right? But I don't really see in there kind of an explanation of where the district court is wrong. I mean, you have what the district court said, then you have what someone said, and then you say that there's no infringement, or that there is infringement. But where is there an explanation, I guess, of how the district court's construction is wrong? In going through the claim construction part of your brief, I kind of saw this theme of stating what the district court said, then saying what someone on your side of the case said, and then saying that under your construction, or under what that person said, there was infringement. But I had a hard time seeing where there was an explanation of how the district court was wrong in its constructions. May I second that? All through that, 8 through 17. The construction of that particular language with non-detachable is non-rotatable, rather. Their magnets don't rotate, except when the tool rotates. Yeah, but I understand what you're saying. Are you saying the district court's claim construction was wrong, or are you saying that there's no infringement under the court's claim construction, or are you saying that there's infringement under the correct claim construction? I'm saying that there is infringement under the correct claim construction. But the difficulty I have is I don't really see you explaining here why the district court's claim construction is wrong. Your Honor, may I? Yeah. Step aside just for a second. Let me go to the magnet protect extending outward from an exterior of the set tool body, which is the language of the 386 patent. Right. In that language, the court said on page 24, each magnet protector by extending beyond the outer circumference of the tool body must create an uneven surface on the exterior of the tool. Where are we talking about now? We're talking about this. This is her opinion, page 23. No, but what limitation are we talking about? We're talking about magnet protector extending outward from an exterior of the said tool body. Okay. Which one is that? This is J. Which page is that on? It's on page 4. It would be J. No, but where is it in your brief? Page 24. No, no, I see that, but I'm trying to see where in your brief you say that it's wrong. 10, Your Honor. 10? It's page 16. Of your brief? Yes, sir. Okay. Now, what the court said is each magnet protector by extending beyond the outer circumference of the tool body must create an uneven surface on the exterior of the tool. That's what she said, what the court said on page 24 of her opinion. Right. Okay. Now, let's just take that. But where do you say that that's wrong? Okay. I go to 16 of your brief, and I see Mr. Rutley explaining, and then Mr. Wester conceded, and then there's no explanation why the district court is wrong in terms of looking at the specification or the prosecution history or anything. Well, Your Honor, the fact is that what the lower court did is to look to the specifications and to limit the claims according to the specifications. But you don't say that in here. All you have is, I mean, the difficulty I have, Mr. Keyes, I just don't see here where you establish error in the district court. I mean, again, you say Mr. Rutley explained, and then Mr. Wester conceded, but there's no analysis in line with our jurisprudence in terms of why the court's construction was wrong. Turning to the facts, where is the magnet protector on the bill tool? Your Honor, I think that Judge Paschall has basically raised an issue. Maybe we have because we're so close to it. Because if you do look at the 727 patent. No, don't look at the patent. Look at the accused device. The accused device has now issued a patent. Well, I understand that, but we're not reviewing another patent. We're reviewing the device. Where is the protector on that? The protector, Your Honor, is the gold items in this photograph. The what? The gold parts, or the protectors, the holes, the magnets around each of these holes. And if you say that basically the claim language says a magnet protector that extends outward from the exterior of the tool body. Now, the judge basically says, look, you've got to have something coming out of this blue area. It has to come up out of the blue area to be into form with this. What we're saying is that this gold area is protecting the magnets. It is below, but it stems out from the bottom of the tool body. Now, if you read the claim without a limitation of the specifications, it is very clear that this claim language covers exactly what they're doing. Well, extends outwardly from an exterior of the tool body means that it's got to be above the exterior of the tool body. Your Honor, the outside circumference of the tool body, or perhaps the lower portion of the tool body. And it says and. From an exterior. Exterior. This is an exterior portion. Oh, it isn't. That's the interior portion. Well, Your Honor, I disagree. I think that if you're going to go around the exterior of this tool, this is a high, this is a low, this is a high, this is a low. There's no way that you could possibly say that this portion is not an exterior of the tool body. An exterior of the tool body. Well, I guess we understand the language differently then. What, ma'am? I understand the language differently from the way you do. But that's why I keep going back to what this case has said in Comart. No, but you've got to read the claim language. The plain claim language extended from an exterior of the said tool body. From an exterior. There's, I mean, Your Honor, you can't juggle words to basically avoid. What we need to do is to take the claim language in the pure and simple sense of its language. Not a twisted, not a, not looking to the specification. What Chisholm has said, what this court has said, is you, it's, it's a. The specification is certainly going to enlighten us as to what is being discussed. And when the specification does show us a shark fin protector extending outwardly above the surface, why would the district judge err in saying that's what your language describes? Because it has violated the Comart Harris v. Comart. It's violated that case. It says very clearly what that case says, Your Honor. That says, that case says that the limitations of the specifications are not to be read into the claims. That the limitations in the specification are not to be read into the claims. That is the law. It says repeatedly that's what happened in Harris. Now, we're not, we're not reading any limitations in. We're trying to decide what it means to extend. Beyond the surface. Beyond the, an exterior surface. An exterior surface. And when we look at what is invented and we see the figure that shows the shark fin protector with the magnet body itself lying above the surface of the, of the tool, that gives us a pretty good idea of what that language means, doesn't it? I agree, Your Honor, but when it comes to interpretation of the claim language and what this court, this very court itself, historically, is that you're not supposed to limit yourself to the drawings or the preferred embodiment. It's a preferred embodiment. It's not. No, but we've got to interpret the claim language and the claim has limited the invention to something which has a protector that extends above the, an exterior surface of the tool body. We're saying, Your Honor, exactly that. If you take. And when I look at the. I realize. No, I can tell we're kind of going in circles here. I'm just suggesting that I don't see how the district court read a limitation into the claim. I think the district court was making a decided effort to interpret the language chosen by the inventor to describe the invention. We respectfully suggest that the claim language is to live on for 20 years. It's not to be the preferred embodiment. The claim language needs to be lifted out of the pattern. It's not to be held by the drawings or the preferred embodiment. That's what Harris and Comart said and DuPont said. Excuse me. How do you define the interior of said tool body? On your picture, which part is the interior? No, the other one, the big one. Well, or either one. No, no, I guess you had it right. Which part is the interior of said tool body? Well, this is an interior hole, an annulus that's through the center. The tool body is this shaded area, completely shaded area. This is the tool body. It is a body that holds these magnets to perform the task that it performs. Mr. McKeady, let's move on and hear from Bilko. And you've consumed your time. We'll restore to you three minutes of rebuttal time. And if you'd give Mr. Riviere an extra three minutes, should he need to use it, that will even things out more. Thank you, Your Honor. May it please the Court, my name is Christopher Riviere. Riviere. Excuse me, Mr. Riviere. I will address the state law claims as the appellant has gone forward with the state law claims first. If you look at Judge Berrigan's reasons for judgment, and more so starting about page 50 through 55, the issues that are raised by the appellant, namely that there were conspiracies, unfair trade practices and such, and that there was proof of in furtherance of these things, simply was not found as a matter of fact by the district court. Your Honor, basically, as we understand the claims put forth by Rattler, it surrounds two factual allegations. The first of all was the subcontracting by an entity called E&E Machining of the machining of the mandrel, the tool body itself, on the Rattler tool to form these traps or settlement areas. And the second issue that they use as a factual basis is the disassembly, which the Court is familiar with. In both of these instances, Judge Berrigan found as a matter of fact that the witnesses put forth on a factual basis did not substantiate or meet the burden of proof requisite to find liability in those instances. And it centers around two witnesses, Your Honor. The first one dealing with the E&E machining of the tool body is a fellow named Bourne. Mr. Bourne testified that he did not bring all of the information, specifications and technical drawings, which Rattler claimed as trade secrets, to Bilko for the machining. He had a confidentiality agreement with Rattler Deltide. He sanitized the drawings and gave only the drawing that showed the Bilko employee, whoever put this in the machine, to do the work, that it was a tool body, normally like other downhole tools in the auto industry, to do a particular job, and he sent it back with the drawing. The allegation of retained information in the CNC machine computers was not substantiated, and Judge Berrigan found accordingly. Secondly, the disassembly issue. Steve Moody was an employee of Deltide Rattler, and he was asked to go and service a tool. We dispute the fact of Bilko being in a contractual relationship with Rattler. In fact, if you look at the reasons for judgment, Judge Ginger Berrigan found specifically that there was no privy of contract in that regard. Mr. Moody went and he saw the tool on either a pallet or a box at the Bilko facility, and the court is correct in noting two magnets of the 20-something magnets on the body were disassembled. But under cross-examination, and these were the facts found by the district court below, that Mr. Moody acknowledged he didn't see any photographs being taken, he didn't see employees handling the tools, he did not see in any regard anything that would be an inquiry to assert the Bilko, I mean, the Rattler design. And in fact, when you look at the photographs and evidence of the tools, they're not very similar at all. Lastly, I want to comment, and then I'll turn it over to my co-counsel, Mr. Helmrich, for the patent issues. But lastly, Judge Berrigan was correct in the disputing under judicial notice the consent judgments by this Mr. Pinnison and Mr. Theriault and the admission against interest for Mr. Coyle not to testify. I think the court was absolutely correct. The defendants have no inference against them if at the end of their case they choose not to call witnesses. The case cited by the appellants in there was an inference trial when somebody seeks protection under the Fifth Amendment and refuses to testify. Thank you very much. Thank you. Mr. Helmrich? What happened to the validity issues? They weren't raised at trial. There was no serious question about validity. You just made a decision not to pursue that angle and went with non-infringement instead? Right. We were fairly sure of the construction issues, and we wanted to go with that. Please, the court, I'm Loren Helmrich, and I was patent counsel for Bilko at this trial. I'd like to make one correction on the record for Kander. In our brief on page 14, there's a two-sentence quote in that paragraph. I noticed that coming out here. It starts with, Rattler's patent protects. That's not a correct quote. At least the second sentence clearly doesn't belong in that quote. So I think the quote probably should end after the first sentence and not after the second sentence because the second wouldn't be part of their quote. With that, I want to make a few comments that relate to the issues that were raised by Rattler in their reply brief. As the court knows, Rattler's patent case is premised upon the position that the trial court erred and it misconstrued these claim terms. They contend that Your Honor relied upon selected extrinsic evidence. If you read the court's decision, she's quite clear that she is basing her decision of claim interpretation on the intrinsic evidence, the patents, the file records, et cetera. And she's saying, and there's no reason to dispute her, she used the extrinsic evidence only for educational purposes to give her a framework for the intrinsic evidence. That's what her decision says and that's what I think is proper. In their reply brief, Rattler raises an argument that the patent office has somehow construed this term majority area in another application. That isn't part of the record, it's not even the same case, it doesn't have the same heritage, and I would think that since it's not in the record, it has no relevance at all in this case. In fact, the comments should be stricter because they're not part of the record. As the court also noted, Rattler in its reply briefing this morning continues at times, selected times, to not refer to the Bilko tool, but refer to the Bilko patent in trying to prove infringement. He's showing a drawing for our patent and saying, see, it covers more than half the area. Well, that's also irrelevant. The patent is still an infringed patent. He's got to talk about our tool if he wants to talk about infringement. There was a challenge to our technical expert, Mr. Westrop. The district court didn't make a particularized finding on the doctrine of equivalence. Is that a problem? No. They raised the doctrine of equivalence a few times at trial, but the contention was essentially we contend that the claims meant this, they contend that the claims meant this, and Your Honor, I'd look at the record to decide what the claims meant. Given the court's construction, in most cases, I don't think there would be any issue of equivalence because the claim language is quite clear. Either the magnets cover a majority area or they don't. I don't know where we get to equivalence on that. I will say on that issue, though, since so much time has been spent on that one area, the point the court made is right. The claim language becomes meaningless unless, like the specification, it says the magnets cover a majority area. They want the claim to now read the magnets and the related magnetic field. Language is not in the claim. But if it was in the claim, it would mean nothing because the magnetic field, of course, covers everything. So to make the language real and meaningful, she had to rely on the specification, which said that the magnets cover a majority area. The only time it uses that term is for the magnets, not the magnetic field in their patent. The court decision, we believe, was well-reasoned, very thorough, recognized the relevant law. She did a lot of homework in trying to understand what the tests were for claim construction, how it should apply that, and I think her decision obviously is right. They would contend that out of 12 claim construction issues, she was wrong on each one of them. I don't think that's an indication she was biased as much as it was an indication that she read the record and didn't buy the claim interpretation positions that Ratler was espousing because they were contrary to the specification. They made no sense in view of the specification in many cases. So the fact that Ratler disagrees with all 12 of her decisions isn't that surprising. The language of the claims under their interpretation would have to be recast. Again, magnets become magnets and their related magnetic fields. Elongated magnetic members become members of any shape as long as they're arranged somehow in some elongated manner. That's not what the spec says. Protectors extending outwardly from the tool body, that was discussed this morning. The primary point behind that one, it's in our brief, is look at the file wrapper of the patent. The examiner cited a reference where there was a recess in the tool body so the magnet wasn't exposed. And they said, that's not what we're talking about. That's a mere recess in the tool body. That's not what we're talking about. And they distinguished LaBosse on that basis. Then they come back and say, well, that's all you have, but we still think you're an infringement. They're barred by estoppel from raising the position that the claim terms should mean what they want it to mean. Belco thinks the court properly construed all the claim terms and that it properly decided once it construed those, there really was no infringement, and we would ask that the decision be affirmed. Thank you. Thank you, Mr. Hemrick. Mr. Katie, you have three minutes. Thank you, Your Honor. First, I think that I've emphasized the issue of the state law claims first and foremost, because we have a situation where the president, the owner of Belco, directed Mr. Peniston to go out and compete with this tool. And Judge Rader is correct. If they have a right to do that, certainly they have a right to do that. Can I raise my question from before? What do you complain about, that the evidence does not support the finding or that the evidence is overwhelmingly, that there was insufficient evidence to make the finding? Your Honor, I think the answer to your question is that I am presupposing that there is, in fact, infringement. I thought we were talking about the state law claims. Well, and I said that as far as the state law claims are concerned, under Louisiana law, the issues were not explored, were not addressed to any length with regard to, I mean, opposing counsel has indicated that this drawing went there, that it was whited out. The fact of the matter is that the drawing had all the intrinsic measurements, that they were, in fact, in the CNC machine, that they were able to leapfrog ahead without the incredible R&D expense that... But what are you complaining about, that she made credibility determinations, as I understand it, and then on the basis of these credibility determinants made a finding? Are you complaining about the credibility determinations being wrong? Are you complaining about the evidence being insufficient? I don't understand the nature of your objection to the ruling. Your Honor, I think in the state law claim ruling that they were not explored sufficiently to give a valid reasoning because there was an enormous amount of evidence with regard to trade secret issues that were not addressed. The directive, the competitive position between these two. But with the few minutes that I have... Let me just make sure I understand. What you're saying is, I think you're saying that the judge, because you tied the state law claims to infringement. So what you're, and you said you, in response to Judge Sobel's question, you're going on the predicate that there's infringement. So I guess what you're saying is that there was infringement and that because there was infringement, the trial judge did not give adequate attention, as she should have, in light of what you say was infringement, to the state law claims. Is that correct? Your Honor, I think that's... So what you would want us to do, I guess, is if we find that the court erred on infringement, you would want us to send it back for the district court to make findings that you claim were not made on the state law claims, right? Right. I think that... Is that what you're... I think... Now, by the same token, though, if we were to affirm on infringement, would that be the end of the case? No, I don't think so, Your Honor. I think that there are sufficient state law claims because of the enormous relationship between these two people. Even if there's no infringement? Even if there's no infringement. That was the whole reason for the Second Amendment complaint, after it was discovered. And those issues were not fully addressed, in all due respect to Judge Sobel's question. I think they weren't addressed properly. But going to the infringement, I have to go back to Chisholm and say, you know, that you have to use, as, you know, those in counsel have indicated, you've got to use the specifications for enlightenment, but you should not use those for limitation. And time after time, if you read her opinion, she basically says that it is... She uses the L-shaped line and goes to Figure 11. There's no L in the claim. There's just a line. And she doesn't find that there's a line. That was the one you didn't appeal to us, right? Oh, no, it's... Of the 13? No, sir. That's the L-shaped one? No, the L-shaped line is there. Okay.  We appreciate your argument. Thank you, Your Honor.